**DAVID J. HOLDSWORTH (4052)**

Attorney for Plaintiff

9125 South Monroe Plaza Way, Suite C

Sandy, UT  84070

Telephone (801) 352-7701

Facsimile (801) 567-9960

david_holdsworth@hotmail.com

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN CENTRAL DIVISION

| | | |
|---|---|---|
| LAURA BETH BRUNDY, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SCHREIBER FOODS, INC., | : | Civil No. 1:19-cv-00060-CW |
| | : | |
| Defendant. | : | Hon. Clark Waddoups |

COMES NOW Laura Beth Brundy, Plaintiff herein, complains of

Defendant Schreiber Foods, Inc. (hereinafter referred to as "Schreiber" or

"Defendant"), demands trial by jury, and as and for causes of action, alleges as follows:

**NATURE OF THE CASE**

This is a civil action for redress and damages arising from Schreiber's

alleged violations of the Americans with Disabilities Act ("ADA").

**PARTIES**

1.     Ms. Brundy is an individual who is a citizen of the United States and a resident of the State of Utah.  At all times relevant to this action, she was an employee of Schreiber Foods, Inc.

2.     Schreiber Foods, Inc., is an "employer" with the meaning of the ADA, and which, at all times relevant to this action, was Ms. Brundy's employer.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to federal question.

4.     Ms. Brundy alleges that at all times relevant to this action, Schreiber was and is subject to the coverage scheme of the ADA.

5.     Ms. Brundy alleges that, at all times relevant to this action, the individuals whose actions are complained of herein are and/or were employees or agents of Schreiber, and for all purposes herein, acted within the course and scope of their employment with and for Schreiber, such that all of their actions and inactions are attributable to Schreiber.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the claims arose in Cache County, State of Utah, Schreiber employed Ms. Brundy in the State of Utah; all of the employment practices alleged herein were committed

within the State of Utah; and the relevant employment records are maintained in the State of Utah.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.     On February 21, 2017, Plaintiff filed a Charge of Discrimination with the Utah Antidiscrimination and Labor Division of the Utah Labor Commission and the U.S. Equal Employment Opportunity Commission in which she alleged that Defendant had discriminated against her based on her disability, and that Defendant had subjected her to retaliation.

8.     The Court may consider for its determination all events that occurred between August 3, 2016, the 180-day jurisdictional mark, and February 21, 2017, the date of filing of Ms. Brundy's Charge of Discrimination.  The Court may treat all other events prior to August 3, 2016 as being untimely for purposes of relief. The Court may give evidence of such events weight for evidentiary purposes.

9.     Thus, all jurisdictional requirements have been met, as required by the ADA.

## STATEMENT OF FACTS

10.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 9 above as if alleged in full herein.

11.     Defendant hired Plaintiff on March 3, 2015, to work as a Shred Wrapper Operation.  Her job duties included operating multiple machines, inspecting product for flaws, helping to fix machines when they would go down, and processing paperwork.

12.     Plaintiff alleges that she suffers from generalized anxiety disorder and Post Traumatic Stress Disorder ("PTSD").

13.     Plaintiff alleges such impairments substantially limited her ability to communicate with male coworkers and perform her job functions because, whenever she is close to or communicates with male coworkers, she is reminded of previous traumatic experiences.  She also alleges that stressful situations make her hands shake.

14.     Plaintiff alleges that, in her job interview before she was hired, she informed Schreiber of her anxiety.

15.     Plaintiff also alleges that, in May 2016, she informed her team lead, Travis Keeton ("Keeton"), of her conditions when she was meeting with him while having a performance evaluation.  She alleges that she specifically mentioned to Keeton that she suffered from PTSD, and that the way a female coworker, Heather Hatch ("Hatch"), was treating her was triggering her symptoms.  For example, she alleges that Hatch would stack boxes and purposely let them fall on her.

4

16.     Thus, Plaintiff alleges that, in May 2016, she complained about Hatch's actions to Keeton.

17.     Plaintiff also alleges that, during the same meeting, she disclosed to Keeton that she struggled with interactions with coworkers, and she alleges that, after she disclosed that to Keeton, Keeton informed her that he would not continue to train her so that she could advance to higher paying positions, but rather would put her on probation until she improved her interpersonal skills.

18.     Plaintiff alleges that this was discrimination based on her disability and that, because of this adverse action, she suffered damages.

19.     However, Plaintiff also alleges that there was another female employee, Lauren Holingshead ("Holingshead"), who had anxiety similar to Plaintiff's, and yet, despite having a disability, Schreiber allowed Holingshead to receive further training and even allowed her to switch shifts because of her coworkers' effect on her condition.

20.     Plaintiff alleges that, during this May 2016 meeting, Ms. Brundy requested a reasonable accommodation in the form of being allowed to remain on line 10, the current line on which she worked.  This was easier, given her social anxiety, because only a few people worked in this area.  Schreiber granted this request.

21.     In June 2016, Ms. Brundy began working with Steve Barret ("Barret") as a boxing coworker.

22.     In July 2016, Elmer Moto ("Moto") became Plaintiff's supervisor.

23.     Plaintiff further alleges that Defendant subjected her to further discriminated based on her disability in July 2016, when one of her coworkers, Barret, got within inches of her face, grazed his buttocks against Plaintiff's crotch, brushed his hand across her breast and leered at her.

24.     Plaintiff alleges that, on July 18, 2016, she discussed her disability with her team advisor, Moto.

25.     Plaintiff alleges she complained to her team advisor, Moto about Barret's conduct and asked for the accommodation of having her coworkers, especially male coworkers, not invade her personal space due to the effect it had on her anxiety and PTSD and due to the interference it would cause with Plaintiff's ability to perform her work.

26.     Moto said he would talk to Barret, but then Moto quit shortly thereafter.

27.     Plaintiff alleges that the request for accommodation she made of Moto in the July 18, 2016 meeting was denied, in that, thereafter, nothing was done to keep her coworkers out of her personal space.

6

28.     Plaintiff alleges that, in August 2016, she also complained to another team advisor, Joyce Gao ("Gao"), and human resources employee, Derek Carlson ("Carlson"), about Barret's harassing conduct.

29.     In August 2016, Ms. Brundy applied for and was awarded the position of Blue Shift FLEX Wrapper Operator ("Blue FLEX Operator").

30.     The Blue FLEX Operation position is a promotion and would have kept Ms. Bruney on line 10.

31.     Plaintiff declined the position because Human Resources implied she would be fired if she accepted the Blue FLEX Operator position.

32.     Ms. Brundy alleges she continued to have problems with Barret, which she reported to her then supervisor, Joyce Gao ("Gao").  Each time Ms. Brundy reported to Gao that Barret was in her space/harassing her, Barret's behavior would stop.  Then, after a while, it would start up again.

33.     In response to Plaintiff's complaints that Barret's behavior would stop and start again, in September 2016, Gao implemented a rule forbidding contact between Barret and Ms. Brundy.

34.     That same month, the position of "Purple FLEX Wrapper Operator ("Purple FLEX Operator") came up for bid.  Although the job was on line 11,

Ms. Brundy bid on it because she would not have to work with Barret. Schreiber awarded her the position.

35.     The Purple FLEX Operator position not only would get Ms. Brundy away from Barret, it was a promotion and came with a pay raise. Plaintiff accepted the position.

36.     Plaintiff alleges that, in October 2016, while she was standing with her back against a wall near the time clocks waiting to clock in and putting on her gear, Barret came up to Plaintiff and pinned her against the wall with his body.

37.     Plaintiff alleges that she subsequently complained to another team advisor, Roger Ochsenbein ("Ochsenbein") about Barret's conduct.

38.     In October 2106, Ochsenbein became Ms. Brundy's supervisor and, to ensure he was aware of her situation, Ms. Brundy told Oschenbein of the past problems with Barret.

39.     Plaintiff also alleges that, on multiple occasions periodically through 2016, and especially in meetings that happened in May, August, and November 2016, Keeton yelled at Plaintiff and scorned her for her attempts to fix the machines when they went down. Plaintiff alleges that this treatment from Keeton aggravated her anxiety and PTSD.

40.    Schreiber allows employees to complete a Time Addition-Change Request Form, commonly referred to as a "blue slip" on occasion when, *e.g.*, an employee forgets to clock in.

41.    Ms. Brundy completed a blue slip on October 17, 2016.  Her explanation for completing it was that she forgot to clock in, but she later admitted it was because she was running late.

42.    Plaintiff also represented on the blue slip that she arrived at 05:59, but the time on the door key/entrance showed she arrived nearly three minutes later, at 6:01:46, meaning she was tardy.

43.    Subsequently, Schreiber investigated Ms. Brundy's actions on October 17, 2016.

44.    In response to questions asked as part of Schreiber's investigation into the time discrepancy, Plaintiff acknowledged, "[I]t just seems fairly common sense that we need to have accuracy for documentation and we need to have honesty."

45.    Plaintiff does not dispute that, in October 2016, she  turned in a time sheet with a discrepancy, but alleges that it was an honest mistake and not grounds for discipline or termination.

46.     Ms. Brundy alleges that she did not believe the corrective action was warranted and claimed that, whether the blue slip rules get enforced, "depends on whether this person was someone's favorite or not their favorite."

47.     In follow up to Ms. Brundy's responses to the seven questions, Schreiber gave her an opportunity to further explain her allegations and concerns.

48.     As part of this follow up, Plaintiff claims that "many people have gotten away with [blue slip violations]."

49.     Asked for names of other employees who had gotten away with blue slip violations, Ms. Brundy told Schreiber, "I don't have specific names, but there are rumors that other people have gotten away with it."

50.     Likewise, Plaintiff testified in her deposition that other employees lied on documents and were not disciplined, but she cannot recall any names.

51.     Plaintiff alleges that, nevertheless, in November 2016, Defendant terminated her employment.

52.     Plaintiff also alleges the reason for the termination was pretextual.

53.     Plaintiff alleges Defendant did so because of her disability and in retaliation for her complaints regarding disability discrimination and her protected activity in requesting reasonable accommodation.

54.     Plaintiff alleges Defendant wanted to get rid of her rather than handling the problem.  Thus, she alleges the circumstances surrounding her suspension and termination support an inference of discrimination in the circumstances.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE ADA
### DENIAL OF REASONABLE ACCOMMODATION

55.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 54 above.

56.     In order to establish a case of failure to accommodate, Plaintiff must allege facts which establish, or tend to establish, that: (1) she has a physical or mental impairment that substantially limits one or more of the major life activities; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; (3) she requested a reasonable accommodation or Defendant knew, or should have known, of her need for an accommodation; and (4) Defendant refused or failed to provide a reasonable accommodation. *Sanchez v. Vilsack,* 695 F.3d 1174, 1177 (10th Cir. 2012).

57.     Plaintiff is disabled in that she has been diagnosed with several psychological impairments, including anxiety, major depression, obsessive compulsive

disorder ("OCD") and PTSD, which interferes with her ability to communicate with others and to work.

58.     Plaintiff alleges that she was qualified to perform the essential functions of the job she held or desired with the reasonable accommodation of having her coworkers respect her personal space.  Plaintiff could perform the essential functions of her position with this accommodation.

59.     Plaintiff alleges that, at various times throughout her employment, she requested reasonable accommodations or Defendant knew, or should have known, that she needed reasonable accommodations.

60.     Plaintiff alleges that she requested reasonable accommodation on July 18, 2016 when she met with Moto and asked Moto if Defendant could request her coworkers to stay out of her personal space because of the effect it had on her ability to concentrate, focus and work.

61.     Plaintiff alleges that Defendant failed to provide her with such a reasonable accommodation in a timely and complete manner.  She alleges that Defendant failed to provide reasonable accommodation because nothing was done for several we4eks about her request to have all of her coworkers respect her personal space.

**SECOND CAUSE OF ACTION**
**PLAINTIFF'S DISABILITY WAS A MOTIVATING FACTOR**

**IN DEFENDANT'S DECISION TO TERMINATE HER EMPLOYMENT**

62.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 61 above.

63.     In order to establish a case of discrimination based on disability, Plaintiff must allege facts which establish, or tend to establish, that: (1) she is disabled in that she has an impairment which is substantially limiting to a major life activity; (2) she was otherwise qualified in that she could perform the essential duties of the position she held or desired, with or without reasonable accommodation; (3) Defendant subjected her to an adverse action and; (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of disability. *Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1142 (10th Cir. 2011); *accord Zwygart v. Bd. of Cnty. Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

64.     As alleged above, Plaintiff is a person with a disability.

65.     As alleged above, Plaintiff was a qualified individual with a disability in that she could perform the essential functions of the job she held or desired with reasonable accommodation.

66.     Defendant subjected Plaintiff to an adverse employment action. An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

13

responsibilities, or a decision causing a significant change in benefits". *Piercy v. Maketa,* 480 F.3d 1192; 1203 (10th Cir. 2007) (*internal quotation omitted*).

67.     Plaintiff alleges that she suffered adverse employment actions in November 2016 when Defendant wrote her up, suspended her pending termination, and subsequently terminated her employment.

68.     Plaintiff also alleges the reason for the termination was pretextual.

69.     Plaintiff alleges Defendant wanted to get rid of her rather than handling the problem.  Thus, she alleges the circumstances surrounding her suspension and termination support an inference of discrimination in the circumstances.

## THIRD CAUSE OF ACTION
## VIOLATION OF ADA
## UNLAWFUL RETALIATION AGAINST PLAINTIFF

70.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 69 above.

71.     In order to establish a case of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) she engaged in protected opposition to discrimination; (2) Defendant subjected her to an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1202 (10th Cir.

2006) (footnote omitted) (citing *Burlington Norther & Santa Fe Ry. Co. v. White,* 548 U.S.  53, 66-68 (2006)).

72.     The Tenth Circuit has held that, "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]".  *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008).  The Tenth Circuit has held that requests for reasonable accommodation are also considered a protected activity under the ADA.  *See Wehrley v. Am. Fam. Mut. Ins. Co.,* 513 F.App'x 733, 740 (10th Cir. 2013) (citing *Jones v. U.P.S., Inc.,* 502 F.3d 1176, 1194 (10th Cir. 2007)).

73.     Plaintiff alleges that she engaged in a protected activity on May 5, 2016, when she told Keeton about her disability and that Hatch's behavior was exacerbating her symptoms; on July 18, 2016, when she told Moto about her disability and that Barrett was getting in her personal space and when she asked for reasonable accommodation; in August 2016, when she told Gao that Barrett was getting in her personal space; and in October 2016, when she complained to Ochsenbein about Barrett's behavior.

74.     After engaged in protected activity, Defendant subjected Plaintiff adverse employment action.  An adverse action is any adverse treatment that is based

on a retaliatory motive and is reasonably likely to deter Plaintiff or others from engaging in a protected activity.  Adverse treatment also includes any act that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.  *Rochon v. Gonzales,* 438 F.3d 1210, 1211 (D.C. Cir. 2006). Defendant subjected Plaintiff to an adverse employment action subsequent to her protected activity in November 2016, when Defendant wrote her up, suspended her pending termination, and terminated her employment.

75.     Plaintiff alleges there is a causal connection between her request for reasonable accommodation/complaints and the subsequent adverse actions. Plaintiff alleges Defendant wrote her up, suspended her and terminated her because of her requests for reasonable accommodation, based on temporal proximity and Defendant's hostility towards her.

76.     Thus, she alleges the circumstances surrounding her suspension and termination support an inference of causal connection.

77.     Plaintiff also alleges the reason for the termination was pretextual.

78.     Ms. Brundy appropriately and timely requested various accommodations and, by so doing, she engaged in protected activity.

79.     After Ms. Brundy engaged in protected activity, Schreiber took various adverse actions against her, including eventually terminating her employment.

80.     Plaintiff alleges Defendant denied Ms. Brundy's rights under the ADA, and then terminated her employment, in part, because of her engaging in protected activity.

81.     By engaging in the actions and inactions set forth above, Schreiber has violated the non-retaliation provisions and protections of the ADA.

82.     Such violations have caused Ms. Brundy losses, injuries and other damages.

83.     Such violations have caused Ms. Brundy to lose wages and other benefits and privileges of her employment.

84.     Such violations have also caused Ms. Brundy physical and psychological distress.

85.     Pursuant to the ADA, Schreiber is liable to Ms. Brundy for all wages, wage increases, employee benefits, and other compensation, to which she would have been entitled but for Schreiber's adverse actions, prejudgment interest on those losses, plus prejudgment interest thereon, reasonable attorney's fees, reasonable expert witness fees and any other costs of this action, and for such other and further equitable relief as this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Laura Beth Brundy hereby prays for the following relief:

1.      On her Causes of Action, for judgment determining that Schreiber violated the ADA, and is, therefore, liable to Ms. Brundy for damages equal to her wages, employment benefits, or other compensation which were denied or lost to Ms. Brundy as a result of Schreiber's violations of the ADA and damages for physical and emotional distress;

2.      For prejudgment interest on her lost wages;

3.      For Ms. Brundy's reasonable attorneys' fees, reasonable expert witness fees, and any other costs of the action;

4.      For post-judgment interest on all amounts awarded to Ms. Brundy herein accruing from the date of judgment to the date of satisfaction of judgment awarded herein; and

5.      For such other and further equitable relief as this Court deems appropriate under the circumstances.

DATED this 20th day of June, 2019.

 */s/ David J. Holdsworth*
David J. Holdsworth
*Attorney for Plaintiff*

18

VERIFICATION

Laura Beth Brundy, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of her own knowledge, except as to those matters alleged on information and belief which she believes to be true.

_/s/ Laura Beth Brundy_____
Laura Beth Brundy

SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of June, 2019.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

_____